## STATE COURT PLEADINGS

1. Civil Cover Sheet

2. Verified Complaint

3. Certificate of Compulsory Arbitration

4. Service of Process:  Warren Defendants

5. Services of Process:  Wittry Defendants

6. Services of Process:  Cal State Electronics, Inc.

7. Docket:  State Court Action

**1**

**In the Superior Court of the State of Arizona**
**In and For the County of** Maricopa

# CV2019-011647

(Please Type or Print)

Plaintiff's Attorney William Fischbach, Amy D. Sells

Attorney Bar Number 019769, 024157

Is Interpreter Needed? ☐ ☒ No

If yes, what language(s):

CLERK OF THE
SUPERIOR COURT
FILED
C. O'NEILL, DEP

19 AUG -8  PM 1: 08

| Plaintiff's Name(s):  (List all) | Plaintiff's Address: | Phone #: | Email Address: |
|---|---|---|---|
| Asset Refresh, LLC; | c/o Tiffany & Bosco, P.A. | 602-255-6000 | wmf@tblaw.com |
| Jeffrey Hartford | 2525 East Camelback Road, 7th Flr | | mat@tblaw.com |
| | Phoenix, AZ 85016 | | |

(List additional Plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s):  (List All)

Anthony S. Warren and Haley Warren

Brendan C. Wittry and Margaret A. Wittry

Cal State Electronics, Inc

(List additional Defendants on page two and/or attach a separate sheet)

## RULE 26.2 DISCOVERY TIER OR MONETARY RELIEF CLAIMED:

**IMPORTANT: Any case category that has an asterisk (\*) MUST have a dollar amount claimed or Tier selected.** State the monetary amount in controversy or place an "X" next to the discovery tier to which the pleadings allege the case would belong under Rule 26.2.

☐ Amount Claimed $_____        ☐ Tier 1    ☐ Tier 2    ☒ Tier 3

## NATURE OF ACTION

Place an "X" next to the **one** case category that most accurately describes your primary case. **Any case category that has an asterisk (\*) MUST have a dollar amount claimed or Tier selected as indicated above.**

## 100 TORT MOTOR VEHICLE:

☐ 101 Non-Death/Personal Injury\*

☐ 102 Property Damage\*
☐ 103 Wrongful Death\*

©Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

CV10f – 010119

Case No._____

**110 TORT NON-MOTOR VEHICLE:**

☐ 111 Negligence*

☐ 112 Product Liability – Asbestos*

☐ 112 Product Liability – Tobacco*

☐ 112 Product Liability – Toxic/Other*

☐ 113 Intentional Tort*

☐ 114 Property Damage*

☐ 115 Legal Malpractice*

☐ 115 Malpractice – Other professional*

☐ 117 Premises Liability*

☐ 118 Slander/Libel/Defamation*

☐ 116 Other (Specify) _____ *

**120 MEDICAL MALPRACTICE:**

☐ 121 Physician M.D.*      ☐ 123 Hospital*

☐ 122 Physician D.O*       ☐ 124 Other*

**130 & 197 CONTRACTS:**

☐ 131 Account (Open or Stated)*

☐ 132 Promissory Note*

☐ 133 Foreclosure*

☐ 138 Buyer-Plaintiff*

☐ 139 Fraud*

☒ 134 Other Contract (i.e. Breach of Contract)*

☐ 135 Excess Proceeds-Sale*

☐ Construction Defects (Residential/Commercial)*

   ☐ 136 Six to Nineteen Structures*

   ☐ 137 Twenty or More Structures*

☐ 197 Credit Card Debt (Maricopa County Only)*

**150-199 OTHER CIVIL CASE TYPES:**

☐ 156 Eminent Domain/Condemnation*

☐ 151 Eviction Actions (Forcible and Special Detainers)*

☐ 152 Change of Name

☐ 153 Transcript of Judgment

☐ 154 Foreign Judgment

☐ 158 Quiet Title*

☐ 160 Forfeiture*

☐ 175 Election Challenge

☐ 179 NCC-Employer Sanction Action (A.R.S. §23-212)

☐ 180 Injunction against Workplace Harassment

☐ 181 Injunction against Harassment

☐ 182 Civil Penalty

☐ 186 Water Rights (Not General Stream Adjudication)*

☐ 187 Real Property *

☐ Special Action against Lower Courts
   (See Lower Court Appeal cover sheet in Maricopa)

☐ 194 Immigration Enforcement Challenge
   (A.R.S. §§1-501, 1-502, 11-1051)

**150-199 UNCLASSIFIED CIVIL:**

☐ Administrative Review
   (See Lower Court Appeal cover sheet in Maricopa)

☐ 150 Tax Appeal
   (All other tax matters must be filed in the AZ Tax
   Court)

☐ 155 Declaratory Judgment

☐ 157 Habeas Corpus

☐ 184 Landlord Tenant Dispute – Other*

☐ 190 Declaration of Factual Innocence (A.R.S. §12-771)

☐ 191 Declaration of Factual Improper Party Status

☐ 193 Vulnerable Adult (A.R.S. §46-451)*

☐ 165 Tribal Judgment

☐ 167 Structured Settlement (A.R.S. §12-2901)

☐ 169 Attorney Conservatorships (State Bar)

☐ 170 Unauthorized Practice of Law (State Bar)

☐ 171 Out-of-State Deposition for Foreign Jurisdiction

☐ 172 Secure Attendance of Prisoner

☐ 173 Assurance of Discontinuance

☐ 174 In-State Deposition for Foreign Jurisdiction

☐ 176 Eminent Domain– Light Rail Only*

☐ 177 Interpleader– Automobile Only*

☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)

☐ 183 Employment Dispute- Discrimination*

Case No._____

☐ 185 Employment Dispute-Other*                    ☐ 163 Other*
☐ 196 Verified Rule 45.2 Petition                        _____
☐ 195(a) Amendment of Marriage License                          (Specify)
☐ 195(b) Amendment of Birth Certificate

## EMERGENCY ORDER SOUGHT

☐ Temporary Restraining Order      ☐ Provisional Remedy      ☐ OSC        ☐ Election Challenge

☐ Employer Sanction                        ☐ Other (Specify) _____

## COMMERCIAL COURT (Maricopa County Only)

☐ This case is eligible for the Commercial Court under Rule 8.1, and Plaintiff requests assignment of this case to the Commercial Court. More information on the Commercial Court, including the most recent forms, are available on the Court's website at:

https://www.superiorcourt.maricopa.gov/commercial-court/.

**Additional Plaintiff(s):**

_____

_____

**Additional Defendant(s):**

_____

_____

**2**

1  William M. Fischbach (SBN 019769)
   Amy D. Sells (SBN 024157)
2
   **TB** T I F F A N Y & B O S C O
3  ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ P.A. ‾‾‾‾‾‾‾‾‾‾‾‾
   SEVENTH FLOOR CAMELBACK ESPLANADE II
4  2525 EAST CAMELBACK ROAD
   PHOENIX, ARIZONA 85016-4237
5  TELEPHONE: (602) 255-6000
   FACSIMILE:  (602) 255-0103
6  EMAIL:  wmf@tblaw.com; ads@tblaw.com
   *Attorneys for Plaintiff*

COPY

AUG 0 8 2019

CLERK OF THE SUPERIOR COURT
C. O'NEILL
DEPUTY CLERK

7
8                    **MARICOPA COUNTY SUPERIOR COURT**

9                              **STATE OF ARIZONA**

10  ASSET REFRESH, LLC, a Delaware          Case No. CV _CV2019-011647_
    limited liability company, derivatively by
11  its member Jeffery Hartford; JEFFERY            **VERIFIED COMPLAINT**
    HARTFORD;
12                                              (Breach of Contract; Breach of Implied
                  Plaintiffs,                  Covenant of Good Faith and Fair Dealing;
13                                               Fraudulent Inducement; Breach of
         vs.                                     Fiduciary Duty; Aiding and Abetting
14                                                  Breach of Fiduciary Duty)
    ANTHONY S. WARREN and HALEY
15  WARREN; BRENDAN C. WITTRY and                              Tier 3
    MARGARET A. WITTRY; CAL STATE
16  ELECTRONICS, INC., a California
    corporation, d.b.a. TOTAL
17  TECHNOLOGY RESULTS, a.k.a. TOTAL
    TR;
18
19                Defendants.
20

21       Plaintiffs Asset Refresh, LLC and Jeffery Hartford, for their Complaint, by and

22  through undersigned counsel, state and allege as follows:

23                      **PARTIES, JURISDICTION, & VENUE**

24       1.     Asset Refresh is, and at all relevant times was, a Delaware limited liability

25  company with its principal place of business in Maricopa County, Arizona.

26       2.     Hartford is a single man residing in Maricopa County.

27       3.     Defendants Anthony Warren ("Warren") and Haley Warren are, on

28  information and belief, a married couple residing in California.

4IU2659                                                                            1

4.     At all times relevant, Warren was acting in furtherance of, and for the benefit of, his marital community.

5.     Defendants Brendan Wittry ("Wittry") and Margaret A. Wittry are, on information and belief, a married couple residing in California.

6.     At all times relevant, Wittry was acting in furtherance of, and for the benefit of, his marital community.

7.     Defendant Cal State Electronics, Inc. is, upon information and belief, a California corporation doing business as Total Technology Results, also known as Total TR ("Cal State").

8.     Defendants caused events to occur in Maricopa County, out of which this Complaint arises.

9.     Pursuant to Ariz.R.Civ.P. 8(b)(2), this case qualifies for Tier 3 designation because the matter is legally and logistically complex and the damages exceed $300,000.

10.     This Court has jurisdiction over this action under A.R.S. § 12-123 and the Arizona Constitution, Article VI, § 14.

11.     Venue is proper in this Court pursuant to A.R.S. § 12-401.

## FACTUAL BACKGROUND

12.     Warren, Wittry, and Hartford formed Asset Refresh in May 2015 in Phoenix, Arizona to assist K-12 schools nationwide with the buyback and resale of their used equipment.

13.     At that time, Warren, Wittry, and Hartford all resided in Arizona.

14.     Under Asset Refresh's Operating Agreement: Warren, Wittry, and Hartford are each a member and a manager of Asset Refresh; Warren, Wittry, and Hartford comprise the Board of Managers; and the Board of Managers, acting by majority vote, has sole and absolute authority over all matters involving Asset Refresh. A true and correct copy of Asset Refresh's Operating Agreement is attached hereto as **Exhibit A**.

15.     The Operating Agreement was subsequently amended to provide that Warren, Wittry, and Hartford each hold a 33.33% membership interest in Asset Refresh.

1  A true and correct copy of the amendment to the Operating Agreement is attached hereto
2  as **Exhibit B**.

3      16.    Asset Refresh operated profitably from its inception through 2018.

4      17.    In or around November 2018, unbeknownst to Hartford, Warren was
5  communicating with Cal State to negotiate the bulk sale of Asset Refresh's products to
6  Cal State at discounted prices.

7      18.    In December 2018, Warren and Wittry approached Hartford, urging him to
8  agree to shut down their business immediately.

9      19.    Warren and Wittry represented to Hartford that they wished to exit the
10  industry immediately and permanently for various personal reasons.

11      20.    Hartford offered to buy the name "Asset Refresh," but Warren and Wittry
12  rejected his offer, stating that they wanted to be completely disassociated with Asset
13  Refresh, and that could only happen if the name "Asset Refresh" no longer existed.

14      21.    Based upon Warren and Wittry's representations and the urgency they
15  conveyed, Hartford acquiesced to shutting down Asset Refresh.

16      22.    On January 18, 2019, Warren provided a draft Termination Agreement to
17  Hartford and Wittry.    Warren mischaracterized the Termination Agreement as
18  memorializing Warren, Wittry, and Hartford's agreement to, among other things,
19  immediately cease conducting any new business under Asset Refresh.

20      23.    Warren then took a family vacation to California on or about January 23 to
21  January 27 2019, to a location in close proximity to Cal State's headquarters.

22      24.    Warren, Wittry, and Hartford executed the Termination Agreement on
23  January 28, 2019, when Warren returned from his California vacation.  A true and correct
24  copy of the executed Termination Agreement is attached hereto as **Exhibit C**.

25      25.    Shortly thereafter, on or about February 11, 2019, Haley Warren posted a
26  picture on social media of neatly stacked moving boxes, announcing the Warrens'
27  relocation to California, stating "…when the opportunity knocked, we jumped in with
28  both feet."

41U2659                                                                        3

1     26.     In or around February 22, 2019, Asset Refresh sold and shipped to Cal State

2 all of Asset Refresh's inventory for a total of $17,000. However, the value of the

3 inventory was no less than $174,678.

4     27.     Contrary to Warren and Wittry's representations to Hartford, they did not

5 exit the industry.

6     28.     Upon information and belief, Warren and Wittry commenced employment

7 with Cal State in early March 2019.

8     29.     To date, Asset Refresh has not filed Articles of Termination, or more

9 appropriately, a Certificate of Cancellation of a Limited Liability Company.

10     30.     The Termination Agreement provides that until Asset Refresh is formally

11 dissolved via filed "Articles of Termination," the Members may engage in business with

12 any customer without restriction.

13     31.     The Termination Agreement further provides that once Asset Refresh files

14 Articles of Termination, it: shall cease conducting business except as necessary to wind

15 up the company's business; shall not accept any new business; and shall not enter into any

16 new contracts.

17     32.     Upon information and belief, before and after the Termination Agreement

18 was executed, Warren and Wittry conducted business under Asset Refresh's name, and

19 withheld the proceeds of that business from Asset Refresh.

20     33.     Upon information and belief, before and after the Termination Agreement

21 was executed, Warren and Wittry diverted Asset Refresh's business to Cal State.

22     34.     Upon information and belief, after the Termination Agreement was

23 executed, and after Warren and Wittry commenced employment with Cal State, Warren

24 and Wittry represented to third parties that Asset Refresh is conducting business as the

25 "sourcing arm" for Cal State. Accordingly, Warren and Wittry leveraged and continue to

26 leverage Asset Refresh's good will in the industry to attract business to Cal State.

27     35.     Upon information and belief, Cal State was aware of Warren and Wittry's

28 conduct alleged herein, and encouraged and assisted Warren and Wittry.

41U2659                                                   4

36.     Under Asset Refresh's Operating Agreement, Warren and Wittry, as the majority vote holders, have sole and absolute authority over all matters involving the company, including the authority to cause the company to sue in its own right.

37.     By letter dated July 10, 2019, undersigned counsel demanded under A.R.S. § 29-831, *et seq.* and 6 Del.C. § 18-1001, *et seq.* that Warren and Wittry cause Asset Refresh to sue upon the claims alleged herein.   A true and correct copy of the demand letter is attached hereto as **Exhibit D.**

38.     To date, Warren and Wittry have failed to respond to the demand, thus refusing to cause Asset Refresh to sue upon the claims alleged herein.

## COUNT I

### BREACH OF CONTRACT

### (Hartford v. Warren and Wittry)

39.     Plaintiffs hereby incorporate by reference all of the preceding allegations set forth in the above paragraphs as if fully set forth herein.

40.     The Termination Agreement is a contract between Warren, Wittry, and Hartford as members of Asset Refresh, setting forth the parties' agreement and understanding as to the wind up and termination of the company.

41.     Hartford has performed all conditions precedent and obligations under the Termination Agreement.

42.     Warren and Wittry breached the Termination Agreement by, among other things: i) continuing to conduct business under Asset Refresh's name, while withholding the proceeds of that business from Asset Refresh and thus, Hartford; and (ii) diverting Asset Refresh's business to Cal State.

43.     Warren and Wittry's breach of the Termination Agreement directly damaged Hartford in an amount to be proven at trial.

**WHEREFORE,** Hartford prays that this Court enter judgment against Warren and Wittry as follows:

A.     Awarding Hartford damages in an amount to be proven at trial;

4IU2659

5

1      B.     Awarding Hartford his attorney fees and costs under A.R.S. §§ 12-341, 12-

2   341.01;

3      C.     Awarding pre- and post-judgment interest in the maximum amount permitted

4   by law; and

5      D.     Awarding such other relief that this Court deems just and proper.

6                              **COUNT II**

7                **BREACH OF THE IMPLIED COVENANT**

8                  **OF GOOD FAITH AND FAIR DEALING**

9                      **(Hartford v. Warren and Wittry)**

10      44.    Plaintiffs hereby incorporate by reference all of the preceding allegations set

11   forth in the above paragraphs as if fully set forth herein.

12      45.    The Operating Agreement is a contract between Warren, Wittry, and

13   Hartford as members of Asset Refresh.

14      46.    The Termination Agreement is a contract between Warren, Wittry, and

15   Hartford as members of Asset Refresh.

16      47.    Hartford has performed all conditions precedent and obligations under the

17   Operating Agreement and Termination Agreement.

18      48.    Implied in every contract is a duty to act fairly and in good faith.

19      49.    Warren and Wittry breached the covenant of good faith and fair dealing

20   implied in the Operating Agreement and the Termination Agreement by, among other

21   things: i) conducting business under Asset Refresh's name while withholding the proceeds

22   of that business from Asset Refresh and thus, Hartford; and (ii) diverting Asset Refresh's

23   business to Cal State.

24      50.    Warren and Wittry's breach of the implied covenant of good faith and fair

25   dealing directly damaged Hartford in an amount to be proven at trial.

26      **WHEREFORE,** Hartford prays that this Court enter judgment against Warren and

27   Wittry as follows:

28      A.     Awarding Hartford damages in an amount to be proven at trial;

41U2659                                                                          6

1      **B.**    Awarding Hartford his attorney fees and costs under A.R.S. §§ 12-341, 12-

2  341.01;

3      **C.**    Awarding pre- and post-judgment interest in the maximum amount permitted

4  by law; and

5      **D.**    Awarding such other relief that this Court deems just and proper.

6  

**COUNT III**

7  

**FRAUDULENT INDUCEMENT**

8  

**(Hartford v. Warren and Wittry)**

9      51.    Plaintiffs hereby incorporate by reference all of the preceding allegations set

10  forth in the above paragraphs as if fully set forth herein.

11      52.    In December 2018, Warren and Wittry approached Hartford, urging him to

12  agree to shut down the business immediately, and representing to Hartford that they

13  wished to exit the industry immediately and permanently for various personal reasons.

14      53.    Warren and Wittry's representations were false.

15      54.    Warren and Wittry's representations were material.

16      55.    Warren and Wittry knew their representations were false.

17      56.    Warren and Wittry intended that Hartford would act upon their

18  representations by entering into the Termination Agreement and agreeing to sell all of

19  Asset Refresh's assets to its competitor, Cal State, for pennies on the dollar.

20      57.    Hartford did not know that Warren and Wittry's representations were false.

21      58.    Hartford relied on the truth of Warren and Wittry's representations by

22  entering into the Termination Agreement and agreeing to sell all of Asset Refresh's assets

23  to Cal State for pennies on the dollar.

24      59.    But for Warren and Wittry's false representations, Hartford would not have

25  entered into the Termination Agreement or agreed to sell all of Asset Refresh's assets to

26  Cal State for pennies on the dollar.

27      60.    Hartford's reliance was reasonable and justified under the circumstances.

28

4IU2659

7

VERIFIED COMPLAINT

61.     As a result, Hartford was directly damaged in an amount to be proven at trial.

62.     Because Warren and Wittry's conduct was wonton or reckless, showed spite or ill will, or demonstrated reckless indifference to the interests of others, Hartford is entitled to punitive damages.

**WHEREFORE,** Hartford prays that this Court enter judgment against Warren and Wittry as follows:

A.     Awarding Hartford damages in an amount to be proven at trial;

B.     Awarding Hartford his attorney fees and costs under A.R.S. §§ 12-341, 12-341.01;

C.     Awarding pre- and post-judgment interest in the maximum amount permitted by law;

D.     Awarding punitive damages in an amount to be proven at trial; and

E.     Awarding such other relief that this Court deems just and proper.

**COUNT IV**

**BREACH OF FIDUCIARY DUTY**

**(Asset Refresh v. Warren and Wittry)**

63.     Plaintiffs hereby incorporate by reference all of the preceding allegations set forth in the above paragraphs as if fully set forth herein.

64.     Warren and Wittry are each a member and a manager of Asset Refresh.

65.     As members and managers of Asset Refresh, Warren and Wittry owe fiduciary duties to Asset Refresh.

66.     Warren and Wittry (i) conducted business under Asset Refresh's name while withholding the proceeds of that business from Asset Refresh; and (ii) diverted Asset Refresh's business to Cal State.

67.     By engaging in a pattern of self-dealing and misconduct, Warren and Wittry breached their fiduciary duties to Asset Refresh.

41U2659

8

VERIFIED COMPLAINT

68.     By letter dated July 10, 2019, undersigned counsel demanded under A.R.S. § 29-831, *et seq.* and 6 Del.C. § 18-1001, *et seq.* that Warren and Wittry cause Asset Refresh to sue upon this claim.

69.     Warren and Wittry have failed to respond to the demand, thus refusing to cause Asset Refresh to sue upon this claim.

**WHEREFORE,** Asset Refresh, derivatively by its member Hartford, prays that this Court enter judgment against Warren and Wittry as follows:

A.     Awarding Hartford damages in an amount to be proven at trial;

B.     Awarding Hartford his attorney fees and costs under 6 Del.C. § 18-1004;

C.     Awarding pre- and post-judgment interest in the maximum amount permitted by law; and

D.     Awarding such other relief that this Court deems just and proper.

**COUNT V**

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

**(Asset Refresh v. Cal State)**

70.     Plaintiffs hereby incorporate by reference all of the preceding allegations set forth in the above paragraphs as if fully set forth herein.

71.     Warren and Wittry breached their fiduciary duties to Asset Refresh as alleged above.

72.     Cal State knowingly participated in the breaches of fiduciary duty committed by Warren and Wittry.

73.     Cal State knew that Warren and Wittry were not authorized to divert Asset Refresh's business and profits to Cal State.

74.     Asset Refresh has suffered damages as a direct and proximate result of Cal State's knowing participation in Warren and Wittry's breaches of fiduciary duty.

75.     Cal State therefore aided and abetted Warren and Wittry's breaches of fiduciary duty.

4IU2659

9

76.     By letter dated July 10, 2019, undersigned counsel demanded under A.R.S. § 29-831, *et seq.* and 6 Del.C. § 18-1001, *et seq.* that Warren and Wittry cause Asset Refresh to sue upon this claim.

77.     Warren and Wittry have failed to respond to the demand, thus refusing to cause Asset Refresh to sue upon this claim.

**WHEREFORE,** Asset Refresh, derivatively by its member Hartford, prays that this Court enter judgment against Warren and Wittry as follows:

A.     Awarding Hartford damages in an amount to be proven at trial;

B.     Awarding Hartford his attorney fees and costs under 6 Del.C. § 18-1004;

C.     Awarding pre- and post-judgment interest in the maximum amount permitted by law; and

D.     Awarding such other relief that this Court deems just and proper.

RESPECTFULLY SUBMITTED this __ day of August, 2019.

TB TIFFANY & BOSCO
P.A.

By: _____
William M. Fischbach
Amy D. Sells
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
*Attorneys for Plaintiff*

4IU2659

10

VERIFIED COMPLAINT

1

2

3

**VERIFICATION**

I, Jeffery Hartford, state the following:

I am a Plaintiff in the above-referenced case and am a member and manager of Asset Refresh, LLC.  I have read the foregoing Verified Complaint.  The facts stated therein are true of my own knowledge except those matters stated upon information and belief.  As for the matters stated upon information and belief, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of August, 2019.

_____
Jeffery Hartford

41i:2659

11

VERIFIED COMPLAINT

**EXHIBIT A**

## MEMORANDUM OF OPERATING AGREEMENT OF
## ASSET REFRESH, LLC
## A DELAWARE LIMITED LIABILITY COMPANY
### (THE "COMPANY")

This Memorandum of Operating Agreement (this "**Memorandum**") is made this 1 day of May , 2015, by and among the undersigned (the "**Members**").

**Purpose:** The purpose of the Company is to engage in any lawful business in which a Delaware limited liability company may engage.

**Management:** The Company shall be manager managed. The business and affairs of the Company shall be managed by a board of "managers" (the "**Board of Managers**") consisting of no less than three individuals appointed by the Members, each Member having the power to appoint one manager (each, a "**Member-Manager**"). The following individuals are each hereby designated as the Managers of the Company: Anthony Scott Warren, Brendan Colin Wittry and Jeffery Scott Fifield Hartford II. Each Member Manager shall have one vote. The Board of Managers, acting by majority vote, shall have sole and absolute authority over all matters involving the Company and to amend the Memorandum as they shall deem necessary and appropriate.

The Board of Managers shall have the authority to appoint and/or remove one or more officers of the Company from time to time to act under the direction of the Board of Managers.

The officers of the Company shall act at the direction of and with the consent of the Board of Managers. Any one or more officers are subject to removal, with or without cause, upon written notice by the Board of Managers

**Capital:** Each Member named on the Schedule of Members attached hereto as **Exhibit A** has made or has been deemed to have made capital contributions to the Company as set forth on **Exhibit A** for the membership interests specified thereon, on the date of this Memorandum. No Member shall be obligated to make capital contributions in excess of the initial capital contribution. The Company may borrow from the members or from third parties.

**Transfers:** No Member may transfer an interest in the Company without the prior written consent of the Board of Managers.

**Tax Partner:** Jeffery Scott Fifield Hartford II is designated as the initial "tax matters partner" for the Company within the meaning of Section 6231(a)(7) of the Code.

EAST\97067466.1

**Distributions:**

The Board of Managers shall distribute excess cash flow from time to time to the Members.

**Withdrawals:**

The Members may not voluntarily withdraw from the Company. If a Member is dissociated from the Company, the Company shall not be required to purchase the Member's interest.

**Indemnification:**

The Managers and the Members shall be indemnified by the Company to the fullest extent permitted by law.

**Ratification:**

All actions of the Company prior to the date hereof are hereby ratified.

**Entire Agreement:**

This Memorandum sets forth the entire agreement of the Members with respect to the matters addressed herein and supersedes all prior agreements and documents with respect thereto. This Memorandum constitutes the operating agreement or limited liability company agreement of the Company, within the meaning of the Delaware Limited Liability Company Law.

*signature page follows*

EAST\97067466. 12

IN WITNESS WHEREOF, the Members have made, executed and delivered this Memorandum as of the date first above written.

Anthony Scott Warren

Brendan Colin Wittry

Jeffery Scott Fifield Hartford II

## ACCEPTANCE

THE UNDERSIGNED hereby accepts appointment as the Managers of the Company.

Anthony Scott Warren

Brendan Colin Wittry

Jeffery Scott Fifield Hartford II

## EXHIBIT A

### SCHEDULE OF MEMBERS

As of _May__ _1_, 2015

| Member and Address | Percentage of Membership Interests1 | Initial Capital Contributions |
|---|---|---|
| Anthony Scott Warren 401 Cotoneaster Ct. Oswego, IL 60543 | 32.5% | $32.50 |
| Brendan Colin Wittry 2835 N. Ashland Ave., #2 Chicago, IL 60657 | 20% | $20.00 |
| Jeffery Scott Fifield Hartford II 27015 Rustic Wood Lane Plainfield, IL 60585 | 47.5% | $47.50 |

1

# EXHIBIT B

## AMENDMENT TO "EXHIBIT A"

### SCHEDULE OF MEMBERS

As of May 2, 2015

| Member and Address | Percentage of Membership Interest |
|---|---|
| Anthony Scott Warren 1894 E. Dublin St. Gilbert, AZ 85295 | 33.33% |
| Brendan Colin Wittry 3756 E Pershing Ave. Phoenix, AZ 85032 | 33.33% |
| Jeffery Scott Fifield Hartford II 3733 E Wethersfield Rd. Phoenix, AZ 85032 | 33.33% |

The Members have made and executed this amendment above and is effective as of May 2, 2015.

Anthony Scott Warren

Brendan Colin Wittry

Jeffery Scott Fifield Hartford II

# EXHIBIT C

Member Managed

# TERMINATION AGREEMENT
# OF
# ASSET REFRESH, LLC

This termination Agreement of Asset Refresh, LLC, a Delaware limited liability Company (the "Company"), is made and entered into as of January 28, 2019 (the "Agreement") by and among Anthony Scott Warren, Brendan Colin Wittry, and Jeffery Scott Fifield Hartford II (the "Members").

The Company was formed pursuant to Articles of Organization filed in Delaware, and

The Members entered into a Memorandum of Operating Agreement on May 1, 2015, and

The Members desire to set forth their agreement and understanding as to the wind up and termination of the Company, all in accordance with the provisions of this Agreement.

NOW, THEREFORE, the parties hereto hereby agree as follows:

## DISSOLUTION AND TERMINATION

1.1     Dissolution.

(a)     The Company shall be dissolved based upon this unanimous written agreement of all Members.

1.2     Effect of Filing of Dissolving Statement.  Upon the dissolution of the Company, the Company shall cease to carry on its business, except insofar as may be necessary for the winding up of its business.  The Company shall not accept any new business or enter into any new contracts.  Although the Company's separate existence shall continue until Articles of Termination have been filed, the Member's may engage in any other business with any customer, without restriction.

1.3     Winding Up, Liquidation and Distribution of Assets.  Upon dissolution, an accounting shall be made by the Company's accountants or Members of the accounts of the Company and of the Company's assets, liabilities, and operations, from the date of the last previous accounting until the date of dissolution.   The Members shall immediately proceed to windup the affairs of the Company.

(a)     The Members shall:

(i)     sell or otherwise liquidate all of the Company's assets as promptly as practicable (except to the extent the Members may determine to distribute any assets to the Members in kind);

(ii)    allocate any profit or loss resulting from such sales pro rata to the Members based upon each Member's Membership Interest;

(iii)   discharge all liabilities of the Members (other than liabilities to Members), including all costs relating to the dissolution, winding up, and liquidation and distribution of assets;

(iv)    establish such reserves as may be reasonably necessary to provide for contingent liabilities of the Company, including, but not limited to, the commercial lease currently in effect; and

(v)     Distribute the remaining assets to the Members in equal shares.

1.4     Articles of Termination.   When all debts, liabilities and obligations of the Company have been paid and discharged or adequate provisions have been made therefore and all of the remaining known property and assets have been distributed to the Members, Articles of Termination shall be executed and filed to terminate the Company.

1.5     Return of Contribution Non-Recourse to Other Members.   Except as provided by law, upon dissolution, each Member shall look solely to the assets of the Company for the return of his Capital Contribution. If the Company property remaining after the payment or discharge of debts and liabilities of the Company is insufficient to return the cash or other property contribution of one or more Members, such Member or Members shall have no recourse against any other Member.

## DISSOLUTION REQUIREMENTS AND DEADLINES

2.1     Stop all payroll and health insurance payments by the company on or before February 28, 2019.

2.2     Have warehouse at 1140 W Alameda Dr. Suite 105-106 available for move in on or before March 1, 2019.

2.3     Leave necessary amount of funds in company account for any prior obligations i.e. warehouse rent through January 2020, building insurance, taxes, etc.

2.4     Member disbursement amounts to be agreed upon unanimously by Members .

## AMENDMENTS

2

3.1    Amendments by Members.  This Agreement may not be amended at any time except upon the unanimous consent of the Members and a written counterpart to such Amendment is signed by all Members.

## GENERAL PROVISIONS

4.1 Entire Agreement/Modification.  This Agreement contains the entire understanding of the parties with respect to the subject matter of the Agreement, and it supersedes all prior understandings and agreements, whether written or oral, and all prior dealings of the parties with respect to the subject matter hereof. This Agreement, in whole or in part, cannot be changed, modified, extended, or discharged without written unanimous consent from all Members.

4.3 Further Actions.  Each of the Members agrees to execute, acknowledge, and deliver such additional documents, and take such further actions, as may reasonably be required from time to time to carry out each of the provisions and the intent of this Agreement, and every agreement or document relating hereto, or entered into in connection herewith.

4.4 Severability.  If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

4.5 Successor and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of the parties and their permitted successors and assigns. This Agreement may not be assigned by any party without the express written consent of the other Members.

4.6 Notices.  All notices, requests, demands, and other communications made hereunder shall be in writing and shall be deemed duly given if delivered personally or sent by mail, email or other electronic communication to the Members at the contact information set forth on the Memorandum of Operating Agreement, or to such other address or person as the Member may designate by notice to the Company.

A Member's address or contact information set forth on the Memorandum of Operating Agreement can be changed by notice given by the Member to the other Members. The inability to deliver written notice because of a changed address of which no notice was given, or rejection or other refusal to accept any notice, shall be deemed to be receipt of the notice as of the date of such inability to deliver or rejection or refusal to accept.

4.7 Attorney's Fees.  In the event of any litigation, arbitration or other dispute arising as a result of or by reason of this Agreement, the prevailing party in any such litigation, arbitration or other dispute shall be entitled to, in addition to any other damages assessed, its reasonable attorney's fees, and all other costs and expenses incurred in connection with settling or resolving such dispute.

3

4.8 <u>ARBITRATION</u>.   ANY DISPUTE, CLAIM, OR CONTROVERSY ARISING OUT OF THIS OPERATING AGREEMENT WILL BE SETTLED BY ARBITRATION IN ARIZONA. SUCH ARBITRATION SHALL BE CONDUCTED IN ACCORDANCE WITH THE REVISED UNIFORM ARBITRATION ACT ("RUAA"). THE PARTY REQUESTING ARBITRATION SHALL SERVE UPON THE OTHER PARTY A NOTICE DEMANDING ARBITRATION AND A DESCRIPTION OF THE ISSUE OR ISSUES TO BE ARBITRATED. ANY AWARD ISSUED AS A RESULT OF THE ARBITRATION MAY BE ENTERED AS A FINAL JUDGMENT OR ORDER IN ANY COURT OF COMPETENT JURISDICTION AND ENFORCED ACCORDINGLY. NOTWITHSTANDING THIS PROVISION, THE AGGRIEVED PARTY SHALL BE ENTITLED TO INJUNCTIVE AND/OR EQUITABLE RELIEF IN A COURT OF COMPETENT JURISDICTION. ALL COSTS AND EXPENSES OF THE ARBITRATION, INCLUDING REASONABLE ATTORNEY'S FEES, SHALL BE ALLOCATED AMONG THE PARTIES AS DETERMINED BY THE ARBITRATOR.

4.9 <u>Construction</u>.   Throughout this Agreement, the masculine, feminine, or neuter genders shall be deemed to include the masculine, feminine, and neuter and the singular, the plural, and vice versa. The section headings of this Agreement are for convenience of reference only and do not form a part hereof and do not in any way modify, interpret, or construe the intentions of the parties.

4.10   <u>Execution and Counterparts</u>.   This Agreement may be executed in several counterparts each of which shall be deemed to be an original, and all such counterparts when taken together shall constitute one and the same instrument.

4.11   <u>Governing Law</u>.   This agreement shall be governed by, and interpreted in accordance with the laws of the State of Arizona. The parties hereby agree that any legal action or proceeding shall be brought in the courts of the State of Arizona. The parties further agree to submit to the jurisdiction of the State of Arizona and consent to the service of process in accordance with applicable procedures and rules of said jurisdiction.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement.

| <u>Name</u> | <u>Date</u> |
|---|---|
| Anthony Scott Warren | 1-28-19 |
| Brendan Colin Wurm | 1/28/19 |
| Jeffery Scott Fifield Hartford II | 1/28/19 |

4

# EXHIBIT D

 **TIFFANY & BOSCO**
P. A.

**William M. Fischbach**
Shareholder
602.255.6036
wmf@tblaw.com

Offices in:
Phoenix, Arizona
Las Vegas, Nevada
San Diego, California
Albuquerque, New Mexico

July 10, 2019

**Via Certified Mail & E-Mail**
Anthony S. Warren
1894 E. Dublin St.
Gilbert, Arizona 85295
twarren60543@gmail.com

Brendan C. Wittry
3756 E. Pershing Ave.
Phoenix, Arizona 85032
bwittry11@gmail.com

RE:   **Notice of Legal Representation of Jeffery Hartford; Demand under A.R.S. § 29-831, *et seq.* and 6 Del.C. § 18-1001, *et seq.*; and Notice to Preserve Evidence.**

Dear Messrs. Warren and Wittry:

This firm represents Jeffery Hartford regarding his dispute with you as fellow member-managers of Asset Refresh, LLC. From this point forward, please refrain from having any direct contact with Mr. Hartford. All future correspondence or communications should be directed to me. All references to "you" in this letter refer to Anthony S. Warren and Brendan C. Wittry.

We are investigating claims Mr. Hartford and Asset Refresh have against you and your employer(s) Total Technology Results and Cal State Electronic Recycling.[1] The general nature of the claims arise out of your false representations to Mr. Hartford in late 2018, urging him to consent to hastily dissolve Asset Refresh and liquidate its assets at fire sale prices, so that you could promptly and permanently exit the industry. Contrary to your representations, you did not exit the industry. Rather, you accepted immediate employment with Asset Refresh's competitors, Total Technology Results and/or Cal State Electronic Recycling—*i.e.,* the *same* entities to whom Asset Refresh's assets were sold for pennies on the dollar at your insistence. In the meantime, you (a) continued doing business under Asset Refresh's name, and withheld the proceeds of that business from Asset Refresh; and/or (b) diverted Asset Refresh's business to Total Technology Results and/or Cal State Electronic Recycling. The foregoing facts under investigation are referred to herein as the "Dispute."

---

[1] References to Cal State Electronic Recycling include Cal State Electronics.

Camelback Esplanade II, Seventh Floor     602.255.6000 Phone
2525 East Camelback Road     602.255.0103 Fax
Phoenix, Arizona 85016-4229



TIFFANY
& BOSCO
——— P.A. ———

Anthony S. Warren
Brendan C. Wittry
July 10, 2019
Page 2 of 7

The Dispute gives rise to direct and derivative claims against you for, at a minimum, breach of the January 28, 2019 Termination Agreement and the covenant of good faith and fair dealing therein; fraudulent inducement with respect to the Termination Agreement; and breach of your fiduciary duties to Asset Refresh.

The purpose of this letter is twofold: (1) to demand under A.R.S. § 29-831(A)(2) and 6 Del.C. § 18-1003, as applicable, that you cause Asset Refresh to sue upon the foregoing claims in its own right; and (2) to put you on notice of your obligation to preserve any evidence that may be relevant to the Dispute.

### Demand under A.R.S. § 29-831, *et seq.* and 6 Del.C. § 18-1001, *et seq.*

Under Asset Refresh's Operating Agreement, you, as the majority vote holders, have sole and absolute authority over all matters involving the company, including the authority to cause the company to sue in its own right. Under A.R.S. § 29-831(A)(2) and 6 Del.C. § 18-1003, as applicable, you are hereby demanded to cause Asset Refresh to sue upon the claims arising out of the Dispute.

Please provide written notice to me in response to this demand by no later than **July 19, 2019**, indicating whether you will cause Asset Refresh to sue upon the claims arising out of the Dispute.

### Demand for Preservation of Evidence

Demand is hereby made that you and your respective agents, attorneys, accountants, employees, associates, partners or other persons occupying similar positions or performing similar functions, take specific steps, as set forth more fully below, to locate and preserve all documents, tangible things and Electronically stored information (ESI) that is, or may be, relevant to the Dispute and any litigation that may be forthcoming related to the Dispute (the "Protected Information"). The Protected Information includes, but is not limited to, any and all documents, tangible things, and ESI evidencing or referring to any of the following

1. All Protected Information that involves or may involve the subject matter of the Dispute;

4151151



Anthony S. Warren
Brendan C. Wittry
July 10, 2019
Page 3 of 7

2. All Protected Information that reflects any investigation you have made related to the subject matter of the Dispute;

3. All Protected Information that names or refers to Mr. Hartford and/or Asset Refresh in any context;

4. All Protected Information involving any business transactions between you on behalf of Asset Refresh, and any third parties;

5. All Protected Information reflecting any communication between any employee of Asset Refresh, including you. This includes e-mails, cell phone records and any other document reflecting any such communications.

6. All Protected Information reflecting any communication between you and Total Technology Results and/or Cal State Electronic Recycling, and any of their respective agents and employees, including, but not limited to, Michael Taghavi, Manny Kagan, Jason Do, Jason Lewandowski, Blake Ashby, David Duong, and Eduin Solano. This includes e-mails, cell phone records and any other document reflecting any such communications;

7. All Protected Information relating to the January 28, 2019 Termination Agreement and all iterations thereof;

8. All Protected Information related to the sale of Asset Refresh's assets.

9. All Protected Information related to your procurement of employment with Total Technology Results and/or Cal State Electronic Recycling.

### Definition of Electronically Stored Information (ESI)

ESI is to be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) information electronically, magnetically or optically stored as:

- Digital Communications (*e.g.*, e-mail, voice mail, instant messaging, texts);
- Word Processed Documents (*e.g.*, Word or WordPerfect documents and drafts);



**TIFFANY & BOSCO** P.A.

Anthony S. Warren
Brendan C. Wittry
July 10, 2019
Page 4 of 7

- Spreadsheets and Tables (*e.g.*, Excel or Lotus 123 worksheets);
- Accounting Application Data (*e.g.*, QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (*e.g.*, .pdf, .tiff, .jpg, .gif images);
- Sound Recordings (*e.g.*, .wav and .mp3 files);
- Video and Animation (*e.g.*, .avi and .mov files);
- Databases (*e.g.*, Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (*e.g.*, Outlook, ACT!);
- Calendar and Diary Application Data (*e.g.*, Outlook PST, Yahoo, Google, blog tools);
- Online Access Data (*e.g.*, Temporary Internet Files, History, Cookies);
- Presentations (*e.g.*, PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and
- Back Up and Archival Files.

**Nothing in this demand for preservation of ESI should be understood or deemed to diminish your concurrent obligation to preserve Protected Information in any other form, including documents, writing and tangible things.**

### Steps to Be Taken for Preservation of ESI

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must intervene to prevent loss due to routine operations and use proper techniques and protocols suited to protect ESI.

**Suspension of Routine Destruction.** You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity, or other criteria;

4181151



Anthony S. Warren
Brendan C. Wittry
July 10, 2019
Page 5 of 7

- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding backup media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media, even if they appear to have malfunctioned or have become obsolete;
- Running antivirus or other programs that cause wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and
- Executing drive or file defragmentation or compression programs.

**Guard Against Deletion.** You are required to act to prevent or guard against third parties who may seek to hide, destroy, or alter ESI.

**Preservation by Imaging.** You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, or the like.)

**Preservation in Native Form.** You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms and should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in any litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

**Metadata.** You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location, and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted

4IS1151



content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

**Servers.** With respect to servers like those used to manage electronic mail (*e.g.*, Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved.

**Home Systems, Laptops, Online Accounts, and Other ESI Venues.** Though we expect that you will act swiftly to preserve data on office workstations and servers, you should also determine if any home or portable systems may contain potentially relevant data. To the extent that you or your employees, colleagues, officers, or agents have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including potentially relevant data from portable and home computers plus portable thumb drives, CD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage). Similarly, if employees, colleagues, officers, or agents used online or browser-based e-mail accounts or services, such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

**Ancillary Preservation.** You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

**Paper Preservation of ESI is Inadequate.** As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you must preserve both forms.



TIFFANY
& BOSCO
P.A.

Anthony S. Warren
Brendan C. Wittry
July 10, 2019
Page 7 of 7

**Agents, Attorneys and Third Parties**.   Your preservation obligation extends
beyond ESI in its care, possession or custody and includes ESI in the custody of others
that is subject to your direction or control.   Accordingly, you must notify any current or
former agent, attorney, employee, custodian or contractor in possession of potentially
relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you
must take reasonable steps to secure their compliance.

Sincerely,

**TIFFANY & BOSCO, P.A.**

*/s/ William M. Fischbach*

William M. Fischbach

Cc:    Jeffery Hartford (via e-mail only)

Anthony Warren
31905 Calle Redondela
Temecula, CA 92592

4181151

**3**

1

William M. Fischbach (SBN 019769)

2

Amy D. Sells (SBN 024157)

COPY

3

**TB** **TIFFANY & BOSCO**
P.A.

AUG 0 8 2019

SEVENTH FLOOR CAMELBACK ESPLANADE II

4

2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-4237

CLERK OF THE SUPERIOR COURT
C. O'NEILL
DEPUTY CLERK

5

TELEPHONE: (602) 255-6000
FACSIMILE:  (602) 255-0103
EMAIL:  wmf@tblaw.com; ads@tblaw.com

6

*Attorneys for Plaintiffs*

7

**MARICOPA COUNTY SUPERIOR COURT**

8

**STATE OF ARIZONA**

9

10

ASSET REFRESH, LLC, a Delaware
limited liability company, derivatively by

Case No. CV ___CV 2019-011647___

11

its member Jeffery Hartford; JEFFERY
HARTFORD;

**CERTIFICATE OF COMPULSORY**

12

**ARBITRATION**

13

Plaintiffs,

**(Not Subject To)**

vs.

14

15

ANTHONY S. WARREN and HALEY
WARREN; BRENDAN C. WITTRY and

16

MARGARET A. WITTRY; CAL STATE
ELECTRONICS, INC., a California

17

corporation, d.b.a. TOTAL
TECHNOLOGY RESULTS, a.k.a. TOTAL

18

TR;

19

Defendants.

20

21

The undersigned certifies that he knows the dollar limits and any other limitations

22

set forth by the local rules of practice for the Maricopa County Superior Court, and further

23

certifies that this case is not subject to compulsory arbitration, as provided by Rules 72

24

through 76 of the Arizona Rules of Civil Procedure.

25

26

27

28

4IU2659

1

RESPECTFULLY SUBMITTED this ___ day of August, 2019.

2

**TB** TIFFANY & BOSCO

3

4

By: _____

5

William M. Fischbach

Amy D. Sells

6

Seventh Floor Camelback Esplanade II

7

2525 East Camelback Road

Phoenix, Arizona 85016-4237

8

*Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4IU2659

**4**

SEP – 4 2019

S. Tavares, Deputy

# In The Maricopa County Superior Court of The State of Arizona and for the County of Maricopa

CERTIFICATE OF SERVICE

2019 SEP

Hartford

Plaintiff,

VS.

Warren

Defendant,

Case No: **CV2019-011647**

State of Arizona
County of Maricopa  }  ss.

The Affiant, declares under penalty of perjury, that I am fully qualified, pursuant to Rule 4(d), Arizona Rules of Civil Procedure, to serve process in this cause in or for the State of Arizona and that the foregoing is true and correct.

On 8/13/2019, I received from Tiffany & Bosco and from Aaron Lloyd the Summons, Complaint, Certificate of Compulsory Arbitration, Plaintiff's Initial Disclosure Statement, Plaintiff's First Set of Discovery to Defendants, Disc with Initial Disclosure Statement documents.

On 8/25/2019, at 11:46 AM, I served the aforementioned documents on: Anthony S. Warren and Haley Warren at , 31905 Calle Redondela, Temecula, CA  92592  in the manner set below:

By personally serving  true copies upon: >Anthony S. Warren and Haley Warren,  being of suitable age and discretion.

The description of the person actually served is as follows: Gender: Female Race: Caucasian Age: 35 Height: 5'6 Weight: 135 Hair: Blonde Eye Color: Hazel Other:

Marriage Status: N / A

Military Status: N / A

Additional Comments: Both Defendants were home and personally served the requested documents & Disc.

X _____

Gari Young, R.P.S. # 1509, Affiant
Date: 8/30/2019
Registered in
Work Order Number: AZ23231
Client Reference: **Hartford/24508-001**

Service of Process - OOS          150.00
                          Total:     **$ 150.00**



\*.AZ23231

**5**



2019 SEP 10  PM 3: 24

In The Maricopa County Superior Court of The State of Arizona
and for the County of Maricopa

Hartford

                                              Plaintiff,            **CERTIFICATE OF SERVICE**

VS.

Wittry                                                              Case No: CV2019-011847

                                              Defendant,

---

State of Arizona
County of Maricopa }   ss.

The Affiant, declares under penalty of perjury, that I am fully  qualified, pursuant to Rule 4(d), Arizona Rules of Civil Procedure, to serve process in this cause in or for the State of Arizona and that the foregoing is true and correct.

On 8/13/2019, I received from Tiffany & Bosco and from William Fischbach the Summons, Complaint, Certificate of Compulsory Arbitration, Plaintiff's Initial Disclosure Statement, Plaintiff's First Set of Discovery to Defendants, Disc with Initial Disclosure Statement documents.

On 8/24/2019, at 11:05 AM, I served the aforementioned documents on: Brendan Witty and Margaret Wittry at , 2850 El Cerro Ct., Apt 217, Carlsbad, CA  92010  in the manner set below:

By personally serving  true copies upon: >Margaret Wittry,  being of suitable age and discretion.

The description of the person actually served is as follows: Gender: Female Race: Caucasian Age: 30's Height: 5'5 Weight: 140 Hair: Brown Eye Color: Brown Other:

Marriage Status: N / A

Military Status: N / A

Additional Comments: A copy for Brendan was left with Margaret

---

COPY

X _____

Carl Walker, RPS 1955, Affiant
Date: 8/30/2019
Registered in
Work Order Number: AZ23232
Client Reference: Hartford /24508-001

Service of Process - OOS              150.00
                    Total:          $ 150.00

',AZ23232



---

ON THE RUN LEGAL SOLUTIONS | 2239 N. Haydon Rd. Suite 101 | Scottsdale, AZ 85257 | (480) 874-4956    Page 1

6

**FILED**
**BY C. FREEMAN, DER** CLERK OF THE
SUPERIOR COURT
RECEIVED RE LOBBY
DOCUMENT DEPOSITORY

**19 AUG 30 PM 12: 16**

In The Maricopa County Superior Court of The State of Arizona
and for the County of Maricopa

| | | |
|---|---|---|
| Hartford | | **CERTIFICATE OF SERVICE** |
| | Plaintiff, | |
| VS. | | Case No: **CV2019-011647** |
| Warren | | |
| | Defendant, | |

State of Arizona
County of Maricopa ⎱  ss.

The Affiant, declares under penalty of perjury, that I am fully qualified, pursuant to Rule 4(d), Arizona Rules of Civil Procedure, to serve process in this cause in or for the State of Arizona and that the foregoing is true and correct.

On 8/13/2019, I received from Tiffany & Bosco and from William Fischbach the Summons, Complaint, Certificate of Compulsory Arbitration, Plaintiff's Initial Disclosure Statement, Plaintiff's First Set of Discovery to Defendants, Disc with Initial Disclosure Statement documents.

On 8/19/2019, at 1:25 PM, I served the aforementioned documents on: Cal State Electronics, Inc. at , 295 Hill St., San Marcos, CA  92078  in the manner set below:

By serving  true copies upon: Cal State Electronics, Inc., Michael Taghavi  - CEO, who stated he/she is authorized to accept service and did accept service on their behalf.

The description of the person actually served is as follows: Gender: Male Race: Caucasian Age: 38 Height: 5;8 Weight: 170 Hair: Black Eye Color:  Other:

Marriage Status: N / A

Military Status: N / A

Additional Comments:

X _____

K.Wysong, RPS: #1802, Affiant
Date: 8/20/2019
Registered in San Diego  .
Work Order Number: AZ23230
Client Reference: **Hartford/24508-001**

| | |
|---|---|
| Service of Process - OOS | 140.00 |
| Total: | **$ 140.00** |



*.AZ23230

7

Skip To MainContent

| Search |

Civil Court Case Information - Case History

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2019-011647 | Judge: | Mahoney, Margaret |
| File Date: | 8/8/2019 | Location: | Downtown |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Asset Refresh L L C | Plaintiff | | William Fischbach |
| Jeffery Hartford | Plaintiff | Male | William Fischbach |
| Anthony S Warren | Defendant | Male | Pro Per |
| Haley Warren | Defendant | Female | Pro Per |
| Brendan C Wittry | Defendant | Female | Pro Per |
| Margaret A Wittry | Defendant | Female | Pro Per |
| Cal State Electronics Inc | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 9/4/2019 | AFS - Affidavit Of Service | 9/11/2019 | |
| **NOTE:** ANTHONY S AND HALEY WARREN | | | |
| 8/30/2019 | AFS - Affidavit Of Service | 9/10/2019 | |
| **NOTE:** CAL STATE ELECTRONICS INC | | | |
| 8/8/2019 | COM - Complaint | 8/12/2019 | |
| 8/8/2019 | CCN - Cert Arbitration - Not Subject | 8/12/2019 | |
| 8/8/2019 | CSH - Coversheet | 8/12/2019 | |

## Case Calendar

**There are no calendar events on file**

## Judgments

**There are no judgments on file**