**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Asset Refresh LLC, et al., | No. CV-19-05215-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Anthony S Warren, et al., | |
| Defendants. | |

Before the Court are Defendants' motions for summary judgment (Doc. 85, 88). The motions are fully briefed (Docs. 90, 97, 101, 102), and the Court heard oral argument on December 27, 2021.  As explained below, Defendant Cal State Electronics Inc.'s ("Cal State") motion is granted, and Defendants Anthony Warren and Brendan Wittry's motion is granted in part and denied in part.

## I.    Background[1]

This case arises from the dissolution of Asset Refresh LLC, an electronics refurbishment business created in 2015 and owned in equal shares by Warren, Wittry, and Plaintiff Jeffrey Hartford.  Asset Refresh focused primarily on buying, refurbishing, and reselling used K-12 school electronic equipment.  Wittry sourced the equipment, Hartford furbished it, and Warren resold it.

Unhappy working for Asset Refresh, Warren and Wittry began exploring other

---

[1] Based on its review of the parties' briefs and their representations during oral argument, the Court finds the following facts to be undisputed.

1   employment options in 2018.  In particular, they contacted Michael Taghavi, CEO of

2   Defendant Cal State—another used technology re-sale company that sometimes was an

3   Asset Refresh customer, other times a competitor—and began discussing potential

4   employment with his company.  These discussions culminated in employment offers from

5   Cal State to Warren and Wittry in November and December 2018.

6        Thereafter, Warren and Wittry broached the issue of dissolving Asset Refresh with

7   Hartford.  Rather than tell him the truth—that they no longer wanted to operate Asset

8   Refresh and, instead, wanted to work for Cal State—Warren and Wittry represented to

9   Hartford that they wanted to exist the industry immediately for personal reasons.   In

10  January 2019, the trio executed a Termination Agreement to wind up Asset Refresh's

11  operations.  Per the Termination Agreement, Asset Refresh ceased accepting new business

12  as of January 28, 2019, its members immediately proceeded to wind up the company's

13  affairs, and all agreed to empty and vacate the company's warehouse by March 1, 2019.

14  The Termination Agreement contains no restrictions on use of information gained at Asset

15  Refresh, nor does it contain a non-compete provision.  To the contrary, it expressly permits

16  members, without restriction, to engage in any other business with any customer.  This

17  provision was included in the Termination Agreement because Hartford was aware that

18  Warren might remain in the technology re-sale industry after Asset Refresh dissolved

19  (albeit, not as an employee of Cal State), and he did not want to limit Hartford's

20  opportunities by insisting that he sign a non-compete.

21       Consistent with the Termination Agreement, Warren and Wittry liquidated Asset

22  Refresh by selling its assets and inventory.  These sales were made to 13 different

23  companies, generating nearly a quarter million dollars in revenue.  Roughly $20,000 worth

24  of these sales were made to Cal State.  The majority of what Asset Refresh sold to Cal State

25  in liquidation was packaging material.  Hartford acknowledges that Cal State was the buyer

26  of last resort of these items, and there is no evidence of any other buyer willing to purchase

27  the items sold to Cal State for a better price.

28       Asset Refresh emptied and vacated its warehouse by February 28, 2019.  Afterward,

Hartford did not remain in the technology refurbishment and resale business but instead went to work for his parents' beverage company.  Warren and Wittry began working for Cal State on March 11, 2019.  Wittry's role at Cal State was the same as it was for Asset Refresh; he sourced used technology for Cal State to bid on for the purpose of acquiring, refurbishing, and reselling.  To that end, Wittry, on behalf of Cal state, emailed some of the school districts and other institutions that were familiar with him from his time at Asset Refresh.  Most of these emails included introductions that Warren and Wittry, formerly of Asset Refresh, had joined Cal State.  But a small fraction of these emails insinuated (inaccurately) that Asset Refresh itself had merged with Cal State.

After learning of Warren and Wittry's employment with Cal State, Hartford brought this lawsuit against Warren, Wittry, and Cal State on behalf of himself and derivatively on behalf of Asset Refresh.  Count 1 of the complaint alleges that Warren and Wittry breached the Termination Agreement; Count 2 alleges they breached  the covenant of good faith and fair dealing implied in the Termination Agreement and Asset Refresh's Operating Agreement; Count 3 alleges that Warren and Wittry fraudulently induced Hartford into signing the Termination Agreement; Count 4 alleges that Warren and Wittry breached their fiduciary duties to Asset Refresh by conducting business under Asset Refresh's name while withholding the proceeds of that business from Asset Refresh, diverting Asset Refresh's business to Cal State, and otherwise engaging in a pattern of self-dealing and misconduct; and Count 5 alleges that Cal State aided and abetted Warren and Wittry's breaches of fiduciary duty.

During discovery, Plaintiffs produced an expert report regarding damages.  The report concludes that Hartford's damages are the difference in the value of his 1/3 minority ownership interest in Asset Refresh but-for Defendants' alleged wrongful acts, and Hartford's economic position in light of the alleged wrongful acts.  To reach a number, the report first assesses the fair market value of Hartford's 1/3 equity interest in Asset Refresh as of January 28, 2019 (the date of the Termination Agreement).  It determines this figure to be approximately $935,000.  From there, it subtracts the distributions Hartford received

1   post-termination (approximately $203,000), resulting in damages of roughly $732,000.

2   **II.    Legal Standard**

3          Summary judgment is appropriate when there is no genuine dispute as to any
4   material fact and, viewing those facts in a light most favorable to the nonmoving party, the
5   movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material
6   if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could
7   find for the nonmoving party based on the competing evidence.  *Anderson v. Liberty Lobby,*
8   *Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061
9   (9th Cir. 2002).  Summary judgment may also be entered "against a party who fails to make
10  a showing sufficient to establish the existence of an element essential to that party's case,
11  and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*,
12  477 U.S. 317, 322 (1986).

13         The party seeking summary judgment "bears the initial responsibility of informing
14  the district court of the basis for its motion, and identifying those portions of [the record]
15  which it believes demonstrate the absence of a genuine issue of material fact."  *Id*. at 323.
16  The burden then shifts to the non-movant to establish the existence of a genuine and
17  material factual dispute.  *Id*. at 324.  The non-movant "must do more than simply show that
18  there is some metaphysical doubt as to the material facts," and instead "come forward with
19  specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co.*
20  *v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation
21  omitted).

22  **III.   Discussion**

23         **A.  Breach of Contract**

24         In his complaint, Hartford accuses Warren and Wittry of breaching the Termination
25  Agreement by "continuing to conduct business under Asset Refresh's name, while
26  withholding proceeds of that business from Asset Refresh and thus, Hartford," and
27  "diverting Asset Refresh's business to Cal State."  (Doc. 1-3 at 11.)  In their motion for
28  summary judgment, Warren and Wittry note that the Termination Agreement expressly

terminated Asset Refresh's business, prohibited it from accepting new business during the wind-up period, and permitted the parties to continue working in the same industry with any customer without restriction. (Doc. 88 at 8.) They argue that they complied with the express terms of the Termination Agreement because the undisputed evidence shows they waited until after Asset Refresh had been terminated and wound up before starting work with Cal State, and therefore conducted business only for Cal State. (*Id.*) In response, Hartford concedes that summary judgment is appropriate on his breach of contract claim. (Doc. 97 at 2 n.1.) The Court therefore grants summary judgment for Warren and Wittry on Count 1 of the complaint.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Hartford accuses Warren and Wittry of breaching the covenant of good faith and fair dealing implied in Asset Refresh's Operating and Termination Agreements. (Doc. 1-3 at 12.) A covenant of good faith and fair dealing is implied in every contract, which precludes the parties from acting in a manner that impairs the ability of the other to receive the benefits that flow from the contract. *See Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986).[2] A party can violate the implied covenant without breaching an express term, particularly when the party acts in a manner that, while not expressly forbidden by the contract's terms, nevertheless undermines the other party's reasonable expectations under the contract. *See Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 435 (Ariz. Ct. App. 2002). But a claim generally cannot be predicated on conduct that is authorized by an express term of the contract. *Id.* at 434.

In his complaint, Hartford alleges that Warren and Wittry breached the implied covenant by "conducting business under Asset Refresh's name while withholding the proceeds of that business from Asset Refresh and thus, Hartford," and "diverting Asset

---

[2] Hartford argues that Delaware law governs the claim as it relates to the Operating Agreement, while Arizona law governs the claim as it relates to the Termination Agreement. But Hartford identifies no material differences between the laws of the two states, and instead acknowledges that "Delaware law concerning the implied covenant is similar to Arizona's," and application of either leads to the same result. (Doc. 97 at 9-10.) For ease, then, the Court cites only to Arizona authorities (which can be found in all parties' briefs), with the understanding that materially similar principles apply in Delaware.

Refresh's business to Cal State." (Doc. 1-3 at 12.) These are the same allegations underlying Harford's breach of contract claim, and they are not borne out by the evidence.

First, there is no evidence in the record that Warren and Wittry conducted any business under Asset Refresh's name while withholding that business from Asset Refresh and Hartford. Per the Termination Agreement, Asset Refresh ceased accepting new business as of January 28, 2019, and the undisputed evidence shows that Warren and Wittry waited until after Asset Refresh wound up before starting work with Cal State. After beginning work with Cal State, Wittry emailed some of the school districts and other institutions that were familiar with him from his time at Asset Refresh, and some of these emails insinuated that Asset Refresh had merged with Cal State. But at no point did Warren and Wittry conduct business under Asset Refresh's, rather than Cal State's, name. And, more importantly, by this time Asset Refresh was incapable of doing business. Warren and Wittry could not have withheld business that Asset Refresh was incapable of accepting.

Second, Hartford has not produced evidence from which a jury could find that Warren and Wittry diverted opportunities to Cal State that otherwise would have belonged to Asset Refresh. To support this allegation, Hartford cites to a single exhibit—Exhibit E, which is a series of text messages exchanged between Taghavi and Wittry. (Doc. 97 at 10.) Hartford does not elaborate on or explain these texts, other than to itemize 5 purportedly diverted business opportunities: (1) Engraver for LAUSD contract, (2) Dell servers, (3) STM Ducks, (4) Apple Enterprise, and (5) Asset Refresh employee. (Doc. 90-1 at 2.) But an examination of these text messages, along with other undisputed evidence in the record, reveals no diverted business opportunities. The texts show that Wittry referred Taghavi to an engraver who could remove engravings on iPads *that Cal State had already acquired as part of the LAUSD contract*. There is no evidence that Cal State did not obtain the LAUSD contract independently through a competitive bidding process, that Asset Refresh had bid on or would have bid on the LAUSD contract, that Wittry referred or diverted the LAUSD contract to Cal State, or that referring Cal State to an engraver in any way diverted business from Asset Refresh (Asset Refresh is not an engraver). The

texts further reveal that Wittry referred a lead to purchase Dell servers to Cal State, but the record also shows that Asset Refresh did not buy servers.  (Doc. 101 at 15.)  Wittry therefore could not have diverted this opportunity from Asset Refresh.  Regarding STM Ducks and Apple Enterprise, the evidence shows that Wittry told Taghavi what he was doing *for Asset Refresh* to secure STM Ducks and contacts at Apple Enterprise.  (Doc. 109-1 at 1-4.)  Hartford cites no evidence that, during the time Asset Refresh was accepting business, Wittry diverted these opportunities to Cal State.  Likewise, Wittry inquired about whether Cal State might be interested in bringing on one of Asset Refresh's other employees after the company dissolved, but nothing in the record indicates that Cal State poached this employee during the time that Asset Refresh was still in business, or that Wittry asked or encouraged it to do so.

Though not pled in his complaint, Hartford argues in his response brief that Warren and Wittry breached the implied covenant of good faith and fair dealing by arranging for the sale of Asset Refresh's inventory to Cal State.  (Doc. 97 at 10.)  But the sale of Asset Refresh's inventory to Cal State cannot support a claim for breach of the covenant of good faith and fair dealing because the Termination Agreement expressly required the parties to wind up Asset Refresh's affairs, including by emptying and vacating its warehouse.  To that end, Warren and Wittry liquidated Asset Refresh's assets and inventory.  Had they not done so, they would have violated the Termination Agreement's commands.  Moreover, a small fraction of Asset Refresh's liquidation sales were made to Cal State, the majority of which was packaging material, and there is no evidence that any other buyer was willing to purchase the items sold to Cal State for a better price.  The undisputed evidence therefore shows that, in selling some of Asset Refresh's assets and inventory to Cal State as part of Asset Refresh's winding up, Warren and Wittry obtained the best possible price for the items (to the benefit of Asset Refresh) and acted in furtherance of the express terms and purposes of the Termination Agreement.  The Court therefore grants summary judgement for Warren and Wittry on Count 2 of the complaint.[3]

---

[3] Hartford also contends he had a reasonable expectation that Warren and Wittry (1) "as controlling managing members of the company, would maintain loyalty to Hartford

### C.  Breach of Fiduciary Duty

"[I]n an action asserting a claim for breach of fiduciary duty, like all tort actions, a plaintiff must allege and prove the existence of a duty owed, a breach of that duty, and damages causally related to such breach."  *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1004 (D. Ariz. 2011) (internal quotation and citation omitted).[4]   In the complaint, Asset Refresh alleges that Warren and Wittry breached their fiduciary duties by "conduct[ing] business under Asset Refresh's name while withholding the proceeds of that business from Asset Refresh," and "divert[ing] Asset Refresh's business to Cal State." (Doc. 1-3 at 12.)   As previously explained, these allegations are not supported by the record.   And even if they were, Asset Refresh would be unable to establish damages casually related to those breaches at trial; Plaintiffs' damages expert does assess the value of any business allegedly withheld or diverted from Asset Refresh.

In its response brief, Asset Refresh also argues that Warren and Wittry breached their duty of loyalty by "dealing with the company in the . . . winding up of the company's activities and affairs as or on behalf of a person having an interest adverse to the company." A.R.S. § 29-3409(B)(2).  (Doc. 90 at 10-11.)  Asset Refresh claims Warren and Wittry did so by arranging for the sale of Asset Refresh's inventory to Cal State after they had surreptitiously accepted future employment with Cal State, and by diverting business opportunities to Cal State that otherwise would have belonged to Asset Refresh.  (Doc. 90 at 11.)  But, as previously discussed, there is no evidence that Warren and Wittry diverted

---

and Asset Refresh," which they undermined by negotiating job offers with Cal State while Asset Refresh was still operating, (2) "would disclose to Hartford all material facts relating to their decision to terminate Asset Refresh," and (3) "would act to maximize, not destroy, the value of Asset Refresh."  (Doc. 97 at 10-11.)  Warren and Wittry argue that these theories (which also are not pled in the complaint's breach of the implied covenant of good faith and fair dealing claim) are merely a repackaging of Hartford's and Asset Refresh's other claims, namely Asset Refresh's breach of fiduciary duty claim and Hartford's fraudulent inducement claim.   (Doc. 102 at 7.)  The Court agrees and will address these allegations in the context of those claims.

[4] Asset Refresh argues that Delaware law governs its breach of fiduciary duty claim, but it identifies no material differences between Delaware law and Arizona law and acknowledges that "the result is the same" regardless of which state's law is applied.  (Doc. 90 at 8-12.)  For ease, then, the Court cites only Arizona authorities (which can be found in all parties' briefs), with the understand that materially similar principles apply in Delaware.

1    any business opportunities from Asset Refresh to Cal State either before or during the

2    wind-up process.  And although Warren and Wittry did arrange for the sale of some of

3    Asset Refresh's inventory to Cal State during the wind-up process, there is no evidence

4    that they conducted these sales "as or on behalf of a person having an interest adverse to"

5    Asset Refresh.  A.R.S. § 29-3409(B)(2).  To the contrary, Cal State was the buyer of last

6    resort for the small amount of inventory Warren and Wittry sold to it, and there is no

7    evidence of any other buyer willing to pay a better price for the materials.  A jury hearing

8    this evidence could only conclude that, in selling this inventory to Cal State, Warren and

9    Wittry obtained the best possible price for items they were required to liquidate per the

10   Termination Agreement.  Indeed, for this same reason, even if Warren and Wittry could be

11   deemed to have violated their duty of loyalty by selling inventory to their future employer,

12   Asset Refresh will be unable to prove damages caused by this breach at trial.

13           This brings the Court to what is the core of this lawsuit.  In its response brief, Asset

14   Refresh argues that Warren and Wittry breached their duty of loyalty and care by failing to

15   disclose what Asset Refresh perceives to be a material conflict of interest on the part of

16   Warren and Wittry related to the decision to terminate Asset Refresh.  (Doc. 90 at 9-11);

17   *see* A.R.S. § 29-3409(B)(4) (duty of loyalty includes a duty "[t]o disclose to each of the

18   other members that are considering or voting on a decision . . . any material conflict of

19   interest on the part of the disclosing member").  As Asset Refresh sees it, Warren and

20   Wittry had a personal interest in dissolving the company that was adverse to the interests

21   of Asset Refresh.  Namely, they had surreptitiously accepted future employment with Cal

22   State, and therefore had an interest in dissolving an occasional competitor to their future

23   employer.  Asset Refresh also contends that Warren and Wittry wanted to dissolve Asset

24   Refresh, rather than sell their interests to Hartford or sell the entire company for fair market

25   value, because they wanted Cal State to benefit from a perceived merger with Asset Refresh

26   without paying fair market value for such a merger.

27           There is evidence in the record that supports Asset Refresh's conflict-of-interest

28   theory.  For example, it is undisputed that Warren and Wittry surreptitiously negotiated

their future employment, withheld this information from Hartford, and lied about their motives for wanting to dissolve Asset Refresh.  There also is evidence that Hartford expressed interest in buying out Warren and Wittry's interests in Asset Refresh, but that Warren and Wittry were not interested in negotiating a purchase price.  (Doc. 85-1 at 17-18.)  After joining Cal State, Wittry emailed his contacts in the industry and insinuated that Asset Refresh had merged with Cal State.  (Doc. 95 at 49-176.)  What's more, there is evidence that one school district granted a contract to Cal State, at least in part, because "the company [the school district] used last time, Asset Refresh, is now part of [Cal State.]"  (Doc. 107-1 at 239.)  A jury hearing this evidence could reasonably conclude that Warren and Wittry wanted to dissolve, rather than sell, Asset Refresh in order to eliminate a potential competitor to their future employer and so they could confer on their future employer the benefit of a perceived merger with Asset Refresh without requiring their future employer to pay fair market value to buy out or otherwise acquire the company.  And a jury could conclude that these facts amount to a conflict of interest.

Defendants' response is two-fold.

First, they argue that this alleged conflict of interest was immaterial because Hartford knew that Warren might continue working as a broker in the technology resale business, yet Hartford nonetheless agreed to dissolve Asset Refresh and knowingly agreed to the omission of a non-compete.  (Doc. 101 at 4.)  Defendants argue that Hartford fails to explain why he would have acted differently had he known, instead, that Warren and Wittry both intended to continue working in the technology resale business as employees of Cal State instead of independent brokers.  (*Id.* at 5.)

Matter is material if a reasonable person would attach importance to it when making a decision.  *See Caruthers v. Underhill*, 287 P.3d 807, 815 (Ariz. Ct. App. 2012).  Defendants raise compelling arguments, and a jury is free to accept them.  But "[u]nless reasonable minds could not differ, materiality is a factual matter which must be determined by the trier of fact."  *Hill v. Jones*, 725 P.2d 1115, 1120 (Ariz. Ct. App. 1986).  And here reasonable minds could differ.  As noted, there is evidence that Hartford expressed interest

1   in buying out Warren's and Wittry's interests in Asset Refresh.  A jury hearing this

2   evidence could find that, had Warren and Wittry disclosed their conflict of interest,

3   Hartford would have approached the termination discussions differently, either by insisting

4   that he be allowed to purchase Warren's and Wittry's interests, or by insisting that they

5   collectively sell the company at a fair market value.

6          Second, Defendants argue that Asset Refresh cannot show that it was damaged by

7   this breach.  (Doc. 101 at 4.)  Defendants note that Plaintiffs' damages expert presumes

8   that Asset Refresh would have continued operating but for Warren's and Wittry's

9   concealment and assesses damages based on this assumption.  They argue this assumption

10  is unfounded because, had Warren and Wittry been truthful about their intentions and

11  Hartford consequently objected to dissolving Asset Refresh, Warren and Wittry would

12  have used their combined majority ownership to vote to dissolve the company anyway.

13  (Doc. 88 at 9.)

14         Again, Defendants raise compelling arguments that a jury is free to accept.  But a

15  close reading of Hartford's deposition indicates that he did not aggressively push to buy

16  out Warren and Wittry because the two did not seem interested in negotiating, and instead

17  did not want to be tied to Asset Refresh going forward.  (Doc. 85-1 at 17-18.)  A jury

18  hearing this evidence could reasonably infer that, had Warren and Wittry been candid about

19  their intentions, Hartford would have been more aggressive in that pursuit or would have

20  insisted that the trio sell the company for a fair market value rather than dissolve it.  Indeed,

21  the fact that Plaintiffs' damages expert calculates a difference in Asset Refresh's fair

22  market value at the time of its termination and the money its members received after its

23  dissolution shows that there was value in Asset Refresh, apart from its tangible assets and

24  inventory, that went unrealized when the parties agreed to terminate, rather than sell, the

25  business.[5]

26         ───────────────
         [5] Plaintiffs also respond that, had Warren and Wittry voted to terminate Asset
27  Refresh over Hartford's objection in order to eliminate a competitor to their future
    employer, such an action would, itself, constitute a breach of fiduciary duty and of the
28  covenant of good faith and fair dealing implied in the Operating Agreement.  (Doc. 97 at
    6-7.)  If Plaintiffs' point is that, had Warren and Wittry been truthful and nonetheless voted
    to terminate Asset Refresh over Hartford's objection, then Asset Refresh would have been

For these reasons, summary judgment is granted on all but one of Asset Refresh's breach of fiduciary duty theories. The Court will permit Asset Refresh to try to a jury its breach of fiduciary duty claim based on Warren and Wittry's alleged failure to disclose a material conflict of interest related to the decision to dissolve Asset Refresh.

### D. Aiding and Abetting Breach of Fiduciary Duty

The sole claim against Cal State is for aiding and abetting breach of fiduciary duty. "Such a claim requires proof of the following elements: (1) the primary tortfeasor must commit a tort causing injury to the plaintiff; (2) the defendant must know the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in achieving the breach." *Cal X-Tra v. W.V.S.V. Holdings, LLC*, 276 P.3d 11, 40 (Ariz. Ct. App. 2012). Asset Refresh has a triable claim that Warren and Wittry breached their fiduciary duties of loyalty and care by failing to disclose a material conflict of interest in the decision to terminate Asset Refresh. Cal State, however, is entitled to summary judgment on the aiding and abetting claim because there is no evidence that Cal State knew that Warren and Wittry concealed or intended to conceal this conflict from Hartford.[6]

### E. Fraudulent Inducement

In Arizona, fraud requires "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury." *Echols v. Beauty Built Homes, Inc*., 647 P.2d 629,

---

embroiled in a different lawsuit instead of this one, the point is not well-taken. In such a situation, Plaintiffs' damages would have been attributable to a different alleged breach, not to the breach at issue here. This argument therefore is non-responsive to Defendants' contention that Asset Refresh would have dissolved (albeit by a 2-1 rather than a unanimous vote) even if Warren and Wittry had been truthful about their intentions.

[6] There is evidence that Cal State knew Warren and Wittry had negotiated their future employment behind Hartford's back. There also is evidence that Cal State knew Warren and Wittry planned to discuss terminating Asset Refresh with Hartford after they had employment offers from Cal State. But this evidence does not show that Cal State knew Warren and Wittry concealed or intended to conceal their future plans from Hartford when the trio finally discussed whether to terminate Asset Refresh. A jury hearing this evidence would be unable to find such knowledge without speculating.

631 (Ariz. 1982).  Hartford claims that Warren and Wittry fraudulently induced him into signing the Termination Agreement by concealing their plans to work for Cal State.[7]  (Doc. 97 at 2-7.)  His argument largely tracks Asset Refresh's breach of fiduciary duty claim.  Hartford contends that Warren and Wittry knowingly misrepresented their reasons for wanting to terminate Asset Refresh, that in reliance on those misrepresentations, Hartford agreed to terminate Asset Refresh, and that had he been told the truth, he would not have entered into the Termination Agreement.

Likewise, Warren and Wittry's arguments for summary judgment largely track their arguments on the breach of fiduciary duty claim.  They argue that their misrepresentations were immaterial, and that Hartford could not have relied upon them because Hartford knew that Warren might continue working as a broker in the technology resale business, yet nonetheless agreed to dissolve Asset Refresh and knowingly agreed to the omission of a non-compete.  They also argue that Hartford cannot show consequent and proximate injury because his damages expert's calculations are premised on the assumption that Asset Refresh would have continued operating (or have been sold at a fair market value) had Warren and Wittry been honest, but Warren and Wittry contend that they would have used their superior voting strength to vote to terminate Asset Refresh over Hartford's objection even had they been forthright about their intentions.

Although breach of fiduciary duty and fraudulent inducement claims have different elements, the Court's analysis of materiality and damages applies to both claims.  For reasons already discussed in its analysis of Asset Refresh's breach of fiduciary duty claim, the Court finds that triable issues of fact preclude summary judgment on Hartford's fraudulent inducement claim.

---

[7] Hartford also reiterates his arguments about the sale of inventory to Cal State. (Doc. 97 at 7-8.)  For the reasons exhaustively explained above, there was nothing nefarious about the arms-length sale of a small fraction of Asset Refresh's inventory to Cal State during the wind-up process.  Cal State was the buyer of last resort.  There was no other buyer willing to pay more for the inventory at issue.  Hartford cannot show he was damaged by this sale.  Hartford's true complaint is not that Warren and Wittry wound up Asset Refresh irresponsibly (the evidence belies this), but instead that Asset Refresh never should have wound up in the first place because the Termination Agreement was secured under false pretenses.  It is with this claim that the Court will engage.

**IT IS ORDERED** as follows:

1.  Cal State's motion for summary judgment is (Docs. 85) is **GRANTED**.

2.  Warren's and Wittry's motion for summary judgment (Doc. 88) is **GRANTED** as to Counts 1 and 2 of the complaint but **DENIED** as to Counts 3 and 4 as explained herein.[8]

3.  The remaining parties shall participate in a telephonic trial scheduling conference on **February 3, 2022, at 10:30 a.m**.  Call-in instructions will be provided via separate e-mail.

Dated this 18th day of January, 2022.

Douglas L. Rayes
United States District Judge

---
[8] Warren and Wittry raise the issue of attorneys' fees in their briefs.  Local Rule of Civil Procedure 54.2 details the procedure a prevailing party must follow in order to recover fees after entry of judgment.